## STATE v. WESLEY BEACH AND ANOTHER.

231 N. W. 2d 75.

June 6, 1975—Nos. 45529, 45530, 45531.

*Warren Spannaus*, Attorney General, *William B. Randall*, County Attorney, and *Steven C. DeCoster*, Assistant County Attorney, for appellant.

*Mandel & Stiegler* and *Alan Stiegler*, for respondent Beach.

*John E. Daubney*, for respondent Fuller.

Heard before Rogosheske, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeals by the state from orders of the District Court of Ramsey County suppressing certain tape recordings and partial transcripts made therefrom, and prohibiting their use by the prosecution's chief witness to refresh his memory for trial.

Affirmed in part and reversed in part.

Prior to March 25, 1974, information had been given to Warren Schmidt, director of the Division of Investigation of the Legislative Audit Commission,[1] that defendant Thomas H. Fuller,

---

[1] The Legislative Audit Commission was created by Minn. St. 3.97 in 1973 as the successor to the Department of Public Examiner. The purpose of that agency is to "see that all provisions of law respecting the appropriate and economic use of public funds are complied with by all departments and agencies of the state government." Minn. St. 3.971. The legislative auditor, the executive secretary of the commission, is vested with broad investigatory powers, including the power of subpoena. § 3.978.

Minn. St. 3.975 provides as follows: "If any such legislative auditor's examinations shall disclose malfeasance, misfeasance, or nonfeasance in office on the part of any officer or employee, a copy of such report shall be signed and verified, and it shall be the duty of the legislative auditor to file such report with the legislative audit commission and the attorney general. It shall be the duty of the attorney general to institute and prosecute such civil proceedings against such delinquent

an employee of the Department of Administration, had received items of value[2] from Robinson-King Floors, Inc., a carpeting company, and others in connection with the letting of certain state contracts.

Mr. Schmidt requested that Fuller meet with him in order to discuss the aforesaid information. On March 25, 1974, a meeting was held between Fuller and Schmidt at the latter's office, at which time an unrecorded discussion took place, during which Fuller indicated that he had received a snowmobile from Robinson-King and also that he had received $2,000 from defendant Wesley Beach in connection with a state contract which he (Fuller) had been instrumental in procuring for Beach.

After the unrecorded interview, with Fuller's full knowledge and consent, a 50-minute statement was taped, the content of which included the information incriminating both Fuller and Beach.

At the meeting of March 25, 1974, Schmidt had given Fuller the "Miranda" warnings. In fact, Fuller executed a form at that time acknowledging his understanding of his rights.

On March 28, Schmidt contacted defendant Beach and requested an interview in regard to the matters brought to light by Fuller's statement of March 25. On that day, Beach came to Schmidt's office for an interview, which was not recorded. At that time a waiver form identical to that signed by Fuller was presented to Beach, which he refused to sign. The interview was later terminated upon Beach's request to consult counsel.

---

officer or employee, or upon his official bond, or both, as may be appropriate to secure to the state the recovery of any funds or other assets misappropriated, and he shall cause such criminal proceedings to be instituted by the proper authorities as the evidence may warrant."

[2] Specifically, that information was that Fuller had received a snowmobile from Robinson-King. Schmidt conducted an investigation which revealed that the snowmobile had been purchased by Robinson-King and licensed in Fuller's name. Officials at Robinson-King allegedly told Schmidt that Fuller had not paid for the snowmobile.

On the following day, Beach and Schmidt again met at the request of Beach. At that interview, which was taped with Beach's knowledge and consent after he had received the Miranda warnings, Beach made statements incriminating himself and Fuller.

At the taped interviews, neither Fuller nor Beach was in custody or under arrest, and both defendants were free to leave at any time.

Immediately after each of these interviews were taped, Schmidt played back a brief portion (30 seconds) in order to determine if they were properly recorded.

Approximately one week after the interviews, Schmidt listened to the tapes. The tapes were again replayed by Schmidt on approximately August 1. During mid-August, the entire Fuller tape was played by Schmidt in the presence of Fuller's counsel, John E. Daubney, along with a portion of the Beach tape.[3] At that time, Daubney did not request (nor did Schmidt offer) a copy of either tape. In fact, the matter was not discussed at that time.

Upon completing his investigation in September 1974, Schmidt turned the tapes over to the Ramsey County Attorney's office. In response to a request from the county attorney, he also prepared and subsequently revised a partial transcript of the taped interview with each defendant.

Schmidt testified before the grand jury and used the transcripts to refresh his recollection for that testimony. Indictments were returned on October 17, 1974, charging defendant Beach with one count of bribery under Minn. St. 609.42, subd. 1(1),

---

[3] Mr. Daubney testified that he had been retained by Fuller in July 1974 to represent him in proceedings before the Civil Service Commission, during which Fuller's employment with the State of Minnesota was terminated.

During the course of his investigation, Daubney was allowed by Schmidt to hear the tapes in order to allow Daubney to determine whether or not the state had probable cause to fire his client. After listening to the tapes, Daubney concluded that such probable cause existed.

and defendant Fuller with two counts of bribery under § 609.42, subd. 1(2).

Thereafter, counsel for each of the defendants requested permission from the county attorney to listen to the tapes and review the transcripts taken therefrom. Their request was denied.

Subsequently, defendants filed a motion in Ramsey County District Court seeking access to the tapes. Approximately one week prior to the hearing giving rise to the instant appeals, that motion was heard. At that hearing, the county attorney agreed to allow defense counsel to make copies of the tapes. That was accomplished several days prior to the Rasmussen hearing, after which the tapes and transcripts were suppressed.

It is uncontested that, at the time the interviews were held and recorded, neither defendant was offered (or requested) copies of the tapes or transcripts thereof.

On November 18, 1974, the Rasmussen hearing was held in the district court to litigate the admissibility of the tapes and transcripts as direct evidence and the propriety of their utilization by Schmidt to refresh his memory for testimony at trial. As noted at the onset of this opinion, the court ordered the suppression of the tapes and transcripts on the ground that, because Schmidt failed to provide defendants with either copies of the tapes or transcripts thereof at the time the tapes were recorded, their use as evidence would be in violation of Minn. St. 611.033. However, the court expressly found no violation of the constitutional rights of defendants in reference to this evidence.

The court in a supplementary order held that testimony by Schmidt about the content of the tapes and transcripts was also inadmissible.

The issues raised on this appeal are:

(1) Is a tape-recorded statement "in writing" under Minn. St. 611.033?

(2) Did the trial court err in suppressing the tapes and transcripts on grounds that their use at trial, either as direct evidence

or for purposes of the refreshment of the recollection of a witness (Schmidt), violated § 611.033?

■ Minn. St. 611.033 provides as follows:

"No statement, confession, or admission *in writing* shall be received in evidence in any criminal proceeding against any defendant unless *at the time of the taking thereof* such defendant shall have been furnished with a *copy* thereof and which statement, confession, or admission shall have endorsed thereon or attached thereto the receipt of the accused which shall state that a copy thereof has been received by him." (Italics supplied.)

The state argues, mainly upon the basis of pragmatic considerations, that tape-recorded statements should not fall within the ambit of the statute at issue. This is a question of first impression in this jurisdiction.

Although there are relatively few cases which are analogous to the issue at hand, the weight of authority appears to support the view that tape recordings are functionally similar to writings in all important respects.

In People v. Purify, 43 Ill. 2d 351, 253 N. E. 2d 437 (1969), the relevant statute, Ill. Rev. Stat. c. 38, § 114—10 (1967), provided in part as follows:

"(a)  On motion of a defendant in any criminal case made prior to trial the *court shall order the State to furnish the defendant with a copy of any written confession made to any law enforcement officer* of this State or any other State and a list of the witnesses to its making and acknowledgment. If the defendant has made an oral confession a list of the witnesses to its making shall be furnished.

\*    \*    \*    \*    \*

"(c)  *No such confession shall be received in evidence which has not been furnished in compliance with subsection (a)* of this Section unless the court is satisfied that the prosecutor was unaware of the existence of such confession prior to trial and that

he could not have become aware of such in the exercise of due diligence." (Italics supplied.)

The Illinois Supreme Court held that "a tape-recorded confession is 'written' for purpose of the [above-quoted] statute." 43 Ill. 2d 357, 253 N. E. 2d 441.

A similar result was reached in People v. Marcus, 31 Cal. App. 3d 367, 370, 107 Cal. Rptr. 264, 265 (1973), where the court held that, "[a] tape recording is a writing within the purview of the best evidence rule."[4]

Moreover, Minn. St. 645.44, subd. 14, dealing with the construction of statutes, provides in part as follows:

" 'Written' and 'in writing' may include any mode of representing words and letters."

In State v. Gensmer, 235 Minn. 72, 81, 51 N. W. 2d 680, 686, certiorari denied, 344 U. S. 824, 73 S. Ct. 24, 97 L. ed. 642 (1952), this court said:

"The statement was taken from defendant by means of a recording machine, and later a transcript of the statement was taken from the record. That is the modern substitute for a statement in longhand. It accomplishes the same purpose, but more expeditiously and more correctly. Defendant complains that the recording machine may be started and stopped at convenience and it does not record the conversations which took place when it was not in action. That observation can with equal force be made with reference to statements taken in longhand. No one questions that statements in longhand which have been properly received in evidence may be taken by the jury into the jury room. We can see no reason why the mechanism and the mechanized version of the statement may not also be received in evidence.

---

[4] The best evidence rule is stated in California Evidence Code, § 1500, as follows: "Except as otherwise provided by statute, no evidence other than the *writing* itself is admissible to prove the content of a writing. This section shall be known and may be cited as the best evidence rule." (Italics supplied.)

In the latter case, no one can question the accuracy of the reproduction of the statements made by the person being questioned."

We conclude that a tape recording of a conversation is a "writing" under § 611.033. The state, however, contends the statute was not intended to cover a taped statement.

Among other contentions, it argues that it is physically impossible to attach a receipt to a tape in compliance with § 611.033. This problem could be easily surmounted either by a recorded oral declaration of receipt or a supplementary written receipt.

The state alleges that providing a contemporaneous copy of the tape or transcript would impose a burden upon law enforcement agencies which, in effect, would deprive them of the use of tape recordings as an effective law enforcement tool. This contention is refutable by noting that the making of two recordings at once is not impossible, nor is cross-recording or making a transcript an onerous burden. Finally, if the legislative mandate of § 611.033 is to be followed, practical problems of law enforcement agencies are more properly addressed to the legislature.

The state asserts that § 611.033 cannot be applied to the tapes at issue because Mr. Schmidt was not a law enforcement official.[5] However, the language of § 611.033 nowhere indicates that its application is limited to law enforcement agencies. Moreover, Minn. St. 3.975 (quoted in footnote 1, *supra*) requires the legislative auditor to transmit any evidence of criminal conduct to the attorney general who "shall cause such criminal proceedings to be instituted by the proper authorities as the evidence may warrant." The purpose of § 611.033 would appear to man-

---

[5] In support of this contention, the prosecution cites United States v. Krilich, 470 F. 2d 341, 351 (7 Cir. 1972). However, that opinion in no way supports the assertion that Minn. St. 611.033 should be strictly limited to police departments and other law enforcement agencies.

Similarly, the case of People v. Durham, 131 Ill. App. 2d 1033, 269 N. E. 2d 348 (1971), is distinguishable because in that case the statute (Ill. Rev. Stat. c. 38, § 114—10 [1969]) expressly applied to confessions made to "any law enforcement officer."

date that it apply to the Legislative Audit Commission as well as to police departments, and we so hold.

In conjunction with the above contention, the prosecution urges that application of § 611.033 to the Legislative Audit Commission is unfair because of the difficulty of informing it and other similar agencies of the requirements of that statute. However, the Legislative Audit Commission was aware of and followed the procedural safeguards required by Miranda v. Arizona, 384 U. S. 346, 86 S. Ct. 1602, 16 L. ed. 2d 694 (1966), to protect defendants' constitutional privilege against self-incrimination. Thus, there appears to be little reason to believe that the Legislative Audit Commission could not be advised of statutory enactments which seek to establish certain procedures regarding the gathering of evidence which ultimately finds its way into criminal proceedings.

Perhaps the most compelling argument raised by the state is that, although a literal application of § 611.033 would exclude the subject tapes and transcripts from use as evidence, such application is unjustified in view of the fact that defendants have shown no prejudice due to the failure of Mr. Schmidt to provide copies of the tapes at the time they were initially recorded.

However, Minn. St. 611.033 is a unique statute. In a strict sense, it is not a discovery statute. Indeed, although Rule 9 of the recently adopted Rules of Criminal Procedure, sets forth detailed discovery procedures, the legislature has expressly excluded § 611.033 from modification by the rules.[6] Therefore, the mandate of the statute is clear—the tapes cannot be received into evidence, and the trial court's ruling on that question was correct.[7]

■ While the statute prohibits the tapes themselves from being received into evidence, it does not bar the prosecution from

---

[6] Minn. St. 480.059, subd. 7(b), passed subsequent to the Miranda decision.

[7] We do not extend this holding to video- or other tapes not recorded for sound alone.

calling Schmidt as its witness and having him testify as to his recollection of what the defendants told him, nor does it bar Schmidt from using the tapes prior to grand jury testimony or prior to trial to refresh his memory as to what the defendants told him. The bar to the use of the tapes is statutory only, and thus the constitutional rule that fruit derived from use of evidence obtained in an unconstitutional manner also cannot be used does not apply here. The parties in their briefs and in oral argument have not seriously questioned the trial court's holding that the failure to supply defendants with copies of the tapes or transcripts thereof at the time of taking raises no constitutional question.

Counsel for defendant Beach in his brief concedes that where an investigator testifies, simply relying on his memory as to what is said, the statute is not applicable because both the investigator and the defendant could testify as to their recollection of the conversation. We feel that the statute similarly is not applicable where the investigator simply refers to the tapes to refresh his memory of what took place. We reach this conclusion because the investigator is subject to cross-examination and impeachment, and because the defendant is certainly able to testify as to his recollection of what occurred and to contradict the testimony of the investigator.

Therefore, that portion of the trial court's order suppressing the tapes as direct evidence is affirmed, but that portion which prohibited Schmidt from testifying and from using them to refresh his memory is reversed.

Each defendant is awarded attorneys fees of $200.

Affirmed in part and reversed in part, and remanded.